UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| KEITH OLEARY, TIMOTHY SHAW, and NATHAN HAVILAND on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>vs.<br><br>HCA HEALTHCARE, INC., a Delaware Corporation doing business as HCA FLORIDA, POINCIANA MEDICAL CENTER, INC., a Florida Corporation; FORT WALTON BEACH MEDICAL CENTER, INC., a Florida Corporation; PALMS WEST HOSPITAL LP, a Delaware Limited Partnership and NORTH FLORIDA DIVISION I, INC., a Florida Corporation; EAST FLORIDA DIVISION, INC., a Florida Corporation,<br><br>    Defendants. | Case No.:<br><br>**CLASS REPRESENTATION**<br>**DEMAND FOR TRIAL BY JURY** |

**CLASS COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, Keith Oleary, Timothy Shaw, and Nathan Haviland, on behalf of themselves and all others similarly situated, and allege the following:

**INTRODUCTION**

1.  Plaintiffs, Nathan Haviland, Timothy Shaw and Keith Oleary (collectively, Plaintiffs) bring this Complaint against Defendant, HCA Healthcare, Inc., which, doing business as "HCA Florida," operates approximately 50 hospitals and emergency rooms in the State of Florida, and which provided emergency care to Plaintiffs and other similarly situated patients, as well as against Poinciana Medical Center, Inc., Fort Walton Beach Medical Center, Inc., Palms West Hospital LP, and North Florida Division I, Inc.

1

2. In this action, Plaintiffs' challenge Defendants' unfair, deceptive, and unlawful practice of charging its emergency care patients a substantial undisclosed emergency room fee (hereinafter the "Surcharge").

3. The Surcharge is billed on top of the charges for the individual items of treatment and services provided, but is not disclosed in advance of treatment and is effectively concealed from a patient presenting at one of Defendants' emergency rooms.

4. Knowledge of this undisclosed Surcharge, which is essentially a "cover charge" or "surcharge" for being seen in one of Defendants' emergency rooms, would be a substantial factor in an emergency care patient's decision to remain at the hospital and proceed with treatment or seek less costly treatment elsewhere.

5. This action is limited to individuals who were provided emergency care (or who are financially responsible for the care of another) after presenting at an emergency room facility operated by HCA Florida or one of its affiliates during the last four years.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendants.

7. Venue is proper here because one or more Defendants are located in or do business in Palm Beach County, Florida, and because a portion of the acts and transactions giving rise to this Complaint took place in Osceola County, Florida.

8. This Court has jurisdiction under 28 U.S.C. § 1332(d) and § 1453, the Class Action Fairness Act ("CAFA") as the parties to this matter are citizens of several states, the amount in controversy exceeds the value of $5,000,000, exclusive of interest and costs, and the class size exceeds one hundred members.

## PARTIES

9. Plaintiffs are informed and believe, and thereon allege, that Defendant, HCA Healthcare, Inc. ("Defendant HCA"), is a Delaware corporation that does business throughout Florida as "HCA Florida."

10. Defendant, Poinciana Medical Center, Inc. ("Defendant Poinciana"), is a Florida Corporation with its principal place of business in Osceola County, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant Poinciana openly acknowledges its affiliation with Defendant HCA.

11. Defendant, Fort Walton Beach Medical Center, Inc., ("Defendant Fort Walton Beach"), is a Florida Corporation that does business in Fort Walton Beach, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant Fort Walton Beach openly acknowledges its affiliation with Defendant HCA.

12. Defendant, Palms West Hospital LP ("Defendant Palms West"), is a Delaware Limited Partnership that does business in Loxahatchee, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant Palm West openly acknowledges its affiliation with Defendant HCA.

13. Defendant, North Florida Division I, Inc. ("Defendant North Florida"), is a Florida corporation with its principal place of business in Leon County, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant North Florida openly acknowledges its affiliation with Defendant HCA.

14. Defendant, East Florida Division, Inc. ("Defendant East Florida"), is a Florida corporation with its principal place of business in Broward County, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant North Florida openly acknowledges its affiliation with Defendant HCA.

15. Defendants conduct business within the State of Florida, have purposely availed themselves of the benefits and protections of this State, and/or have sufficient contact with this State such that maintenance of this action in this locale would be consistent with traditional notions of fair play and substantial justice.

16. Most Defendants are based in Florida, and all operate hospital emergency facilities within the State directly or indirectly.

17. Plaintiff, Nathan Haviland ("Plaintiff Haviland"), is a resident of Wentville, Missouri, over the age of eighteen years, who treated at Defendant Poinciana's emergency room in Osceola County, Florida.

18. Plaintiff, Timothy Shaw ("Plaintiff Shaw"), is a resident of Palm Beach County, Florida, over the age of eighteen years, who treated at Defendant Palm West's emergency room in Palm Beach County, Florida.

19. Plaintiff, Keith Oleary ("Plaintiff Oleary"), is a resident of Okaloosa County, Florida, over the age of eighteen years, and is a guarantor for the treatment provided to his son at Defendant Fort Walton Beach's emergency room in Palm Beach County, Florida.

20. Plaintiffs are informed and believe, and thereon allege, that Defendants own, operate, and/or provide management and billing services to said individual facilities and to other HCA Florida hospitals and emergency facilities.

### **AGENCY ALLEGATIONS**

21. Plaintiffs are informed and believe, and thereon allege, that Defendant HCA Florida is one of the largest, private health systems in the State, operating 50 hospitals and 31 surgery centers.

22. Defendant HCA owns, operates and controls the activities of the other hospital defendants, and shares the same location as its principal place of business—One Park Plaza, Nashville, Tennessee.

23. In public documents, Defendant HCA makes clear that it does more than simply monitor its subsidiary hospitals – to the contrary, HCA is directly involved in setting and enforcing hospital guidelines and is specifically involved in the billing practices of these hospitals.

24. In committing the acts alleged herein, each named hospital defendant is and was the agent of Defendant HCA and acted with the knowledge, consent, permission, cooperation, and authorization of Defendant HCA.

25. Defendant HCA exercises control over each named hospital defendant by developing, authorizing, and controlling their patient admission agreements, as well as their internal policies relating to pricing, billing, and collection practices.

26. At Defendant HCA's direction and with their approval, each named hospital defendant represents itself as being part of Defendant HCA's medical system.

27. In committing the acts alleged herein, each named hospital defendant acted in the course and scope of its agency and was acting with the knowledge, consent, permission, cooperation, and authorization of Defendant HCA.

28. All such actions were ratified and approved by Defendant HCA or its officers, directors, controlling persons, agents, partners, or joint venturers.

29. Defendant HCA perpetuated and/or aided and abetted the wrongdoings of the other named hospital defendants as described herein.

**GENERAL ALLEGATIONS**

30. Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendants used a Conditions of Admission and other contract forms (hereinafter "Contracts"),

drafted by Defendants, which terms are not dictated by statute or otherwise, and which all emergency care patients (or their agents) were presented with and requested to sign. Plaintiffs are informed and believe and thereon allege that the Contracts makes no mention of any Surcharge that is charged in addition to the individual charges for the specific services provided. Further, this Surcharge is not disclosed on signage posted in or around Defendants' emergency room facilities or disclosed verbally during the patients' registration process.

31. Despite Defendants' failure to disclose their intention to bill emergency care patients a Surcharge, Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendants had a practice of charging emergency room patients a substantial, yet totally hidden and undisclosed Surcharge at all of their Florida Emergency Room Facilities, which Defendants set at one of five fixed levels that are determined after discharge, with the level of the charge being based on an internally developed, undisclosed formula known exclusively to Defendants.

32. Plaintiffs are informed and believe and based thereon allege that these substantial Surcharges are not based on the individual items of treatment or services provided to the patient. Rather, they are Surcharges billed to emergency room patients simply for presenting and being seen at one of Defendants' emergency rooms. Further, Defendants intent to impose these Surcharges is not disclosed in Defendants' Contract, is not disclosed through visibly postage on signage placed in or around Defendants' emergency rooms where a patient would at least have the opportunity of knowing of their existence, and they are not disclosed to patients verbally during the registration process. Further, the formula or algorithm which Defendants use to determine the level of Surcharge (1, 2, 3, 4 or 5) is also not disclosed to patients, making it impossible for patients to know or seek to limit the level or amount of the Surcharge they will be billed.

33. Thus, Plaintiffs are informed and believe and thereon allege that Defendants failed to inform emergency care patients that they would be billed a substantial undisclosed and unmentioned Surcharge in addition to the charges for individual items of treatment

furnished to the patient, and which, if known about prior to treatment, would be a substantial factor in a patient's decision to remain at the Hospital and proceed with treatment or seek less costly treatment elsewhere. The high cost of medical services is a matter of great public concern, and emergency care patients have a right to be informed of a Surcharge before it is incurred. Defendants' failure to disclose their Surcharges results in a lack of pricing transparency and a lack of informed consent by patients who are unaware of such Surcharges. Further, Plaintiffs are informed and believe and thereon allege that many emergency care patients, if made aware of Defendants' Surcharges prior to receiving treatment, would choose to seek less costly treatment elsewhere.

34. Defendants bill this Surcharge in addition to their charges for the specific services and treatment rendered, even though: (a) this substantial Surcharge is not disclosed to patients in Defendants' Contract, in signage posted in or around its emergency rooms, or disclosed verbally to patients at the time of registration, (b) emergency care patients cannot reasonably be expected to be aware of this Surcharge, (c) Defendants are well aware that most emergency room patients are unaware of Defendants' intention to add a Surcharge to their bill, and (d) knowledge of the existence and amounts of this Surcharge would be a substantial factor in influencing a reasonable patient's decision as to whether to remain and seek treatment at one of Defendants' emergency rooms.

35. The failure to disclose the Surcharge is particularly egregious in light of the fact that Defendants represent themselves as providing care and help to patients in the community.

36. Unlike a normal arms-length transaction between a buyer and seller, a patient seeking medical services at one of Defendants' emergency rooms places a great degree of trust and confidence on the good intentions of the hospital to treat him or her fairly and with compassion.

37. This trust and reliance is heightened by Defendants' Mission Statement that "We act with absolute honesty, integrity, and fairness in the way we conduct our business and the way we live our lives." Defendant HCA Healthcare, on its website and elsewhere, states as

part of its mission and values: "We are committed to delivering healthcare as it should be: patient-centered and for the good of all people, no matter their circumstance. To achieve this, we must be active; we must be kind. We must work with integrity." Defendants further represent that their single mission is: Above all else, we are committed to the care and improvement of human life.

38. Through these statements and others, Defendants represent to potential patients that they will put the patient's needs first and thereby create a heightened duty to disclose issues, including hidden surcharges, which are adverse to the patient's interest. The relationship of a patient in a hospital which promises care and compassion is nothing like the relationship between a merchant attempting to sell his wares, and a stranger seeking to purchase such wares. While the relation of a hospital and doctor to an emergency room patient may not be a strictly fiduciary relationship, the relationship is certainly far beyond that of a typical arms-length, buyer-seller relationship.

## **ALLEGATIONS AS TO REPRESENTATIVE HAVILAND**

39. On or about October 23, 2016, Plaintiff Haviland received emergency treatment/services at Defendant Poinciana's emergency facility, where, on information and belief, he was provided with and signed Defendant Poinciana's standard form Contract.

40. Plaintiff Haviland was not furnished a copy of the Contracts at the time of signing or upon discharge, and, on information and belief, alleges that the standard practice of Defendants HCA, North Florida and Poinciana is to have emergency care patients (or their legal guardians) sign the Contracts without providing a copy of the signed Contract to the patient at the time of signing or upon discharge.

41. While at Defendant Poinciana, Plaintiff Haviland received no notice or warning, either in the Contract, in posted signage in the emergency room, or verbally at the time of registration, as to the substantial Surcharge that Defendant Poinciana intended to add (and did add) to his bill on top of the individual charges for each item of treatment and services provided to him.

42. The gross amount (before discounts) subsequently billed for the treatment/services provided to Plaintiff Haviland by Defendant Poinciana was $23,865.59, which included an undisclosed Surcharge of $3,935.25 for merely being seen in Defendant Poinciana's emergency room, in addition to charges for the individual items of treatment and services provided.

43. Plaintiff Haviland was surprised, dismayed and aggrieved when he found out that he had been charged a Surcharge of $3,935.25, in addition to the charges for the individual items of treatment and services provided, as a result of merely being seen in Defendant Poinciana's emergency room.

## ALLEGATIONS AS TO REPRESENTATIVE SHAW

44. On or about January 21, 2019, Plaintiff Shaw received emergency treatment/services at Defendant Palms West Hospital, where, on information and belief, he was provided with and signed Defendant Palms West Hospital's standard form Contract.

45. Plaintiff Shaw was not furnished a copy of the Contracts at the time of signing or upon discharge, and, on information and belief, alleges that the standard practice of Defendants HCA, North Florida and Palms West Hospital is to have emergency care patients (or their legal guardians) sign the Contracts without providing a copy of the signed Contract to the patient at the time of signing or upon discharge.

46. While at Palms West Hospital, Plaintiff Shaw received no notice or warning, either in the Contract, in posted signage in the emergency room, or verbally at the time of registration, as to the substantial Surcharge that Defendant Palms West intended to add (and did add) to his bill on top of the individual charges for each item of treatment and services provided to him.

47. The gross amount (before discounts) subsequently billed for the treatment/services provided to Plaintiff Shaw by Defendant Palms West Hospital was $5,437.00, which included an undisclosed Surcharge of $1,642.00 for merely being seen in the Defendant

9

Palms West Hospital's emergency room, in addition to charges for the individual items of treatment and services provided.

48. Plaintiff Shaw was surprised, dismayed and aggrieved when he found out that he had been charged a Surcharge of $1,642.00, in addition to the charges for the individual items of treatment and services provided, as a result of merely being seen in the Defendant Palms West Medical Center's emergency room.

**ALLEGATIONS AS TO REPRESENTATIVE OLEARY**

49. On or about December 18, 2017, Plaintiff Oleary's minor dependent received emergency treatment/services at Defendant Fort Walton Beach where, upon information and belief, he was provided with and signed Defendant Fort Walton Beach's standard form Contract.

50. Plaintiff Oleary was not furnished a copy of the Contracts at the time of signing or upon discharge, and, on information and belief, alleges that the standard practice of Defendants HCA, North Florida and Fort Walton Beach Medical Center is to have emergency care patients (or their legal guardians) sign the Contracts without providing a copy of the signed Contract to the patient at the time of signing or upon discharge.

51. While at Defendant Fort Walton Beach Medical Center's emergency room, Plaintiff Oleary received no notice or warning, either in the Contract, in posted signage in the emergency room, or verbally at the time of registration, as to the substantial Surcharge that Defendant Fort Walton Beach intended to add (and did add) to his bill on top of the individual charges for each item of treatment and services provided to him.

52. The gross amount (before discounts) subsequently billed for the treatment/services provided to Plaintiff Oleary's minor dependent by Defendant Fort Walton Beach was $6,617.41, which included an undisclosed Surcharge for merely being seen in Defendant Fort Walton Beach's emergency room, in addition to the charges for the individual items of treatment and services provided.

53. Plaintiff Oleary was surprised, dismayed and aggrieved when he found out that he had been charged a substantial Surcharge in addition to the charges for the individual

items of treatment and services provided, as a result of merely being seen in the Defendant Fort Walton Beach's emergency room.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this action on behalf of themselves and a class of all other persons similarly situated, defined as follows:

> The financially responsible individual for any patient who, within the last four years, received treatment at any of Defendants' emergency room facilities located in Florida, and who was charged an emergency room fee which was billed in addition to the charges for the individual items of treatment and services provided (the "Class").
>
> Excluded from the Class are any officers or directors of Defendants, together with the legal representatives, heirs, successors, or assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.

55. Defendants have collectively and individually acted or refused to act on grounds generally applicable to Class members and have engaged in a systemwide policy of billing emergency care patients a substantial undisclosed Surcharge, thereby making final injunctive relief concerning the Class as a whole appropriate.

56. This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, predominance, typicality, adequacy of representation, and superiority requirements.

57. Plaintiffs seek to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

58. The members of the Class are so numerous that joinder of all members of the Class is impractical. Plaintiff is informed and believes and thereon alleges that the Class consists of at least tens of thousands of persons.

59. This action involves the question as to whether Defendants' uniform practice of billing emergency care patients a substantial, totally undisclosed and hidden Surcharge is unfair, deceptive, and/or unlawful. This question dominates over any individual issues that might exist.

60. The claims of Plaintiffs are typical of the claims of the Class, and Plaintiffs are members of the Class as defined.

61. To resolve this dispute, Plaintiffs collectively, individually and on behalf of the Class requested, are entitled to a declaration pursuant to Florida's Declaratory Judgments Act and Florida's Deceptive and Unfair Trade Practices Act, Florida Code §§ 86.021 and 501.211, of their legal rights and duties with respect to their payment obligations under the Contract, including a determination as to the conscionability of Defendants' billing of an undisclosed Surcharge, a determination as to whether Defendants have a "duty to disclose" their intention to bill emergency care patients a "Surcharge" in advance of rendering treatment/services which trigger such Surcharge, and an injunction against Defendants' unfair and deceptive acts.

62. Further, the Florida Declaratory Judgment Act is remedial in nature and should be broadly construed. See § 86.101, Fla. Stat.

63. Likewise, the purpose of the Florida Deceptive and Unfair Trade Practices Act is remedial and designed to protect the consuming public against unconscionable, deceptive and unfair business practices. See § 501.202(2), Fla. Stat.

64. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs share the same interests as all Class members because each of the named Plaintiff's claims are typical of those of other Class members.

65. Plaintiffs have retained competent class counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of the Class members.

66. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, the question posed is a simple question equally applicable to all class members: whether or not Defendants have a duty to disclose their intention to impose a substantial emergency room level fee before such fee is incurred by a patient. A class action is far superior to other methods of resolution since joinder of all Class members is impracticable, and it would be virtually impossible for the Class members to efficiently redress their wrongs individually.

67. Even if all Class members could afford such individual litigation themselves, the court system would benefit from a class action.

68. Individualized litigation would present the potential for inconsistent or contradictory judgments.

69. Individualized litigation of the issues presented by this case would also magnify the delay and expense to all parties and the court system.

70. By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as an economy of scale and expense.

## FIRST CAUSE OF ACTION
**Declaratory Judgment**

71. Plaintiffs herein repeat, reiterate, and reallege each and every allegation contained in paragraphs one (1) through seventy (70), inclusive, with the same force and effect as though the same were set forth at length herein.

72. Plaintiffs and members of the Class are entitled to a declaration that Defendants' practice of charging undisclosed Emergency Department facility fees, in addition to the charges for the specific services and treatments provided, is an unconscionable billing practice, and that the Contracts' term which Defendants contend authorizes such charges does not authorize such charges and/or is unenforceable.

73. Plaintiffs and members of the Class are entitled to a further declaration that Defendant owed Plaintiffs and Class Members a duty to disclose its intention to charge a Surcharge, in advance of providing treatment that would trigger a Surcharge, because of (1) the substantial nature of Defendants' Surcharge, (2) the relationship between Defendants and their emergency room patients, (3) the hidden nature of Defendants' Surcharge, (4) the general lack of knowledge of emergency room patients as to Defendants intent to bill them such a Surcharge, (5) the lack of reasonable opportunity for an emergency room patient to find out about such a Surcharge, (6) the fact that knowledge as to such a Surcharge would be a material factor in a patient's decision to remain at Defendants' emergency room in order to seek treatment and services, and (7) Defendants are aware that a typical emergency room patient is not aware of their intention to add a Surcharge to the patient's bill.

74. The declarations sought above are necessary and appropriate since Plaintiffs and the Class have been impacted financially by Defendants' excessive, undisclosed Surcharges. Even for those patients whose Surcharge has not yet been paid, they should not have to wait until collection efforts are underway, or their credit is ruined by negative credit entries, or lawsuits are instituted by Defendants, before obtaining a legal determination of their obligations with respect to Defendants' Surcharges.

75. Plaintiffs are also entitled to declaratory and injunctive relief to prohibit Defendants from continuing to charge undisclosed Surcharges, and from pursuing existing collection activity for such undisclosed Surcharges.

76. No monetary damages or restitution are sought within this complaint, and no "reasonable value" determinations as to any of the services provided to Plaintiffs or any other patient are sought within this action.

## SECOND CAUSE OF ACTION
**Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")
Section 501.211(1)**

77. Plaintiffs herein repeat, reiterate, and reallege each and every allegation contained in paragraphs one (1) through seventy (70), inclusive, with the same force and effect as though the same were set forth at length herein.

78. Plaintiffs were not expecting to be billed a substantial Surcharge that was not mentioned in their Contracts, posted on signage in the emergency rooms, or verbally disclosed to them during registration.

79. Such billing by Defendants was, and continues to be, an unfair and deceptive practice.

80. Defendants' conduct described herein constitutes unfair, deceptive, and/or unconscionable trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as provided by §§ 501.201-.213, Florida Statutes, including violations of:

   a. The standards or unfairness and deception set forth and interpreted by the Federal Trade Commission or by the federal courts, as set forth in FDUTPA, §§ 501.203(3)(b) and 501.204; and/or

   b. The law against unfair and deceptive trade practices set forth in 15 U.S.C. §§ 45(a)(1) and incorporated into FDUTPA, §§ 501.203(3)(c) and 501.204.

81. Defendants unfairly, deceptively, and unlawfully fail to inform and/or conceal from their patients Defendants' uniform policy of billing substantial undisclosed Surcharges to emergency room patients in addition to the charges for individual items of treatment or services provided.

82. Knowledge of these Surcharges would be a substantial factor in a patient's decision as to whether to remain at the Hospital and proceed with treatment.

83. The failure to disclose material information is "deception" within the meaning of FDUTPA. Such deception has occurred here, and shown by Defendants' failure to disclose, in their Contracts, in signage posted in or around the emergency room facilities, or verbally at patient registration, the hidden and undisclosed facility fees which Defendants intend to add to an emergency patient's bill.

84. The Surcharges, if disclosed in advance, would be a material factor in a reasonable patient's decision to remain and accept services in the facility, as opposed to seeking less costly treatment elsewhere.

85. Defendants' conduct described above also amounts to "unfair" business practices which are immoral, unethical, oppressive, and unscrupulous.

86. As a result of Defendants' conduct alleged herein, Plaintiffs have been aggrieved by the ongoing billing and collection practices of Defendants, as described herein, and are entitled to declaratory and injunctive relief to prevent such practices pursuant to § 501.211(1) of FDUTPA, which provides as follows:

> 501.211       Other individual remedies.—
>
> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for the following relief against Defendants, and each of them, as to all causes of action:

1. For an order certifying that this action may be maintained as a class action against Defendants and appointing Plaintiffs and their counsel to represent the Class;

2. For a declaration or declarations as prayed herein;

3. For injunctive relief to enforce the relief prayed for herein;

4. For an order awarding Plaintiffs and members of the Class the costs of their suit, including, but not limited to, reasonable attorneys' fees and expert fees; and

5. For such other and further relief as may be just and proper.

Plaintiffs, on behalf of themselves and the Class, respectfully request trial by jury on all claims so triable.

Respectfully Submitted,       DATED: May 15, 2019

                                      */s/ Jared M. Lee, Esq.*
                                      Jared Michael Lee, Esq.
                                          Florida Bar #: 0052284
                                      Jackson Lee | PA
                                      1991 Longwood Lake Mary Rd
                                      Longwood, FL 32750
                                      Tele: (407) 477-4401
                                      Fax: (407) 477-4949
                                      Jared@JacksonLeePA.com
                                      *Counsel for Plaintiffs*