**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

KEITH OLEARY, TIMOTHY SHAW, and
NATHAN HAVILAND on behalf of
themselves and, all others similarly situated,

        Plaintiffs,

vs.

**CASE NO.: 19-CV-80647-WJ**

HCA HEALTHCARE, INC., a Delaware
Corporation d/b/a HCA FLORIDA,
POINCIANA MEDICAL CENTER, INC.,
a Florida Corporation; FORT WALTON
BEACH MEDICAL CENTER, INC.,
a Florida Corporation; PALMS WEST
HOSPITAL LP, a Delaware Limited
Partnership and NORTH FLORIDA
DIVISION I, INC., a Florida Corporation;
and, EAST FLORIDA DIVISION, INC.,
a Florida Corporation

        Defendants.
_____/

## DEFENDANT HOSPITALS' MOTION TO DISMISS COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Poinciana Medical Center, Inc. ("Poinciana"), Fort Walton Beach Medical Center, Inc. ("Fort Walton Beach"), and Palms West Hospital Limited Partnership (Palms West") (collectively, the "Defendant Hospitals"), move to dismiss with prejudice the Class Complaint and Demand for Jury Trial (the "Complaint," D.E. 1). Dismissal with prejudice is appropriate in light of Plaintiffs' multiple attempts to bring the same claims and because such claims would be futile.[1]

---

[1] As set forth in Defendants' pending Joint Motion to Stay Proceedings, To Determine Entitlement to Fees and Costs Incurred in Previously Dismissed Action, and (Precautionary) Request for an Extension of Time to Respond to Complaint and Incorporated Memorandum of Law (D.E. 16), this is the *third* complaint asserting claims based (in whole or part) on allegedly undisclosed emergency department facility fees. Plaintiffs lack standing to pursue such claims for the reasons set forth herein.

## **PRELIMINARY STATEMENT**

The Complaint alleges that the Defendant Hospitals engage in a practice of billing patients treated in the emergency room a "facility fee" (which Plaintiffs also term a "surcharge") that is not disclosed in advance of treatment. Far from being an undisclosed "surcharge," emergency department facilities fees are the standard industry charge for emergency department services, and as such, are recognized by the Centers for Medicare & Medicaid Services ("CMS") which has included and incorporated them into CMS's approved billing codes. Nonetheless, Plaintiffs seek a declaration that charging such fees is unconscionable and that the admission contracts signed by Plaintiffs at the time of treatment are unenforceable, as well as injunctive relief prohibiting Defendants from continuing to engage in this alleged practice.

The Complaint should be dismissed for perhaps the most basic reason a Complaint can fail: nothing happened. Plaintiffs suffered no injury whatsoever. They never paid the facility fees of which they complain. There were never even invoiced for the facility fees of which they complain. Indeed, the only reason they are even *aware* of the facility fees of which they complain is that they expressly requested that the Defendant Hospitals send them an itemization of full charges. The Defendant Hospitals honored that request, providing the itemization, which was accompanied by a statement that reflected that a *Patient Statement* would provide the patient's responsibility and that payment would be due upon receipt of the Patient Statement. Accordingly, Plaintiffs lack standing to pursue their claims because there simply is no live case or controversy. They cannot manufacture standing by asking the Hospitals to send them a document and then complaining that the receipt of that document caused them "dismay."

Even assuming they had been invoiced for facility fees, the accounts of both Plaintiffs Shaw and Haviland had been written off before they filed suit and Defendants have not been pursued for any payment from them since. As such, even if they once had viable claims, the claims are moot.

Plaintiffs fail to state a claim for the additional reason that emergency department facilities fees are not "concealed." They are disclosed in the Hospitals' Charge Masters, which are made available to patients upon request, and incorporated into admission contracts. By the same token, federal and state transparency laws and regulations require that hospitals post their charges online, rendering Plaintiffs' claims for injunctive relief all the more moot. For that reason and the others described below, the Complaint fails to state a claim for declaratory relief.

2

## STATEMENT OF FACTS[2]

### A. PLAINTIFF HAVILAND

Plaintiff Haviland received emergency medical services at Poinciana on October 23, 2016. Compl. ¶39. Haviland acknowledges that at the time of service, he executed a "standard form Contract," otherwise described as the "Conditions of Admission" contract. *Id.*, ¶¶30, 39.

Haviland alleges that "the gross amount (before discounts) subsequently billed for the treatment/services he received was $23,865.59," which included an allegedly undisclosed "surcharge" of $3,935 in addition to "charges for the individual items of treatment and services provided." *Id.*, ¶42. Haviland alleges that he received no notice that Poinciana intended to add this "surcharge" to his bill, ¶41, and that he was "surprised, dismayed and aggrieved" when he found out about it. *Id.*, ¶43.

Notably, the Complaint fails to attach either the Conditions of Admissions contract or any bills Haviland allegedly received.[3] Haviland's Conditions of Admission contract, at Section 5 states, in pertinent part:

> In consideration of the services to be rendered to Patient, Patient or Guarantor individually **promises to pay the Patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the Patient's account**. . . . An estimate of the anticipated charges for services

---

[2] The Defendant Hospitals' Motion to Dismiss is brought pursuant to both 12(b)(1) and 12(b)(6). For purposes of a Rule 12(b)(1) factual attack on jurisdiction, the Court may consider extrinsic documents. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). Alternatively, for purposes of a motion to dismiss brought pursuant to Rule 12(b)(6), the court may consider a document attached to a motion to dismiss, without converting the motion into one for summary judgment, if the documents are (1) central to the plaintiff's claim and (2) undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[3] Notably, Haviland described the Conditions of Admission contract in detail in his previously dismissed lawsuit. *See* Appendix of Select Pleadings from First Action, (D.E. 17), App'x 1, *Haviland et al v. Poinciana Medical Center, Inc. et al.*, Case No. 6:19-cv-00293-RBD-TBS (M.D. Fla.), Complaint, dated January 10, 2019, D.E. 1-1, at ¶¶13-14. Poinciana attached the relevant billing document, Conditions of Admission Contract, and Haviland's acknowledgement of Poinciana's uninsured discount and charity policy to its motion to dismiss in that prior action. *See* Appendix of Select Pleadings from First Action, (D.E. 17), App'x 3, Motion to Dismiss and Strike Class Allegations and Incorporated Memorandum of Law, *Haviland et al v. Poinciana Medical Center, Inc. et al.*, Case No. 6:19-cv-00293-RBD-TBS (M.D. Fla.), dated February 25, 2019, D.E. 13, at D.E. 13-1 (Patient Statement for $3,102.53, February 21, 2017); D.E. 13-2 (Conditions of Admissions); and 13-3 (Uninsured Patient Information Document).

3

to be provided to the patient is available upon request from the hospital. Estimates may vary significantly from the final charges based on a variety of factors, including but not limited to the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services.
. . .
**If supplies and services are provided to Patient who has coverage through a governmental program or through certain private health insurance plans, the hospital may accept a discounted payment for those supplies and services. In this event any payment required from the Patient or Guarantor will be determined by the terms of the governmental program or private health insurance plan. If the Patient is uninsured and not covered by a governmental program, the patient may be eligible to have his or her account discounted or forgiven under the hospital's uninsured discount or charity care programs in effect at the time of treatment.** I understand that I may request information about these programs from the hospital.

*See* Haviland Conditions of Admission contract, attached as Exhibit 1 (emphasis added).

Haviland also received (and his wife acknowledged on his behalf) an "Uninsured Patient Information Document," which explained that the total charges for his services would be discounted under Poinciana's discount program for uninsured patients, and further explained how his account would be processed. *See* Uninsured Patient Information Document, attached as Exhibit 2. Specifically, that document explained that the total charges for Haviland's services would be posted to his account, the uninsured discount would then be applied, and Haviland would only owe the reduced amount. *Id.*

Although the Complaint alleges that "the gross amount (before discounts) subsequently billed" to Haviland was $23,865.59, it omits the fact that Poinciana's standard discount for uninsured patients was applied to the charges before Haviland was invoiced. On January 13, 2017, Haviland requested and subsequently received an itemized statement of charges, which reflected the full charges relating to his services as described in the Uninsured Patient Information Document. *See* Declaration of Records Custodian of Poinciana ("Poinciana Decl."), at ¶6, attached as Composite Exhibit 3; *see also* Haviland Itemized Statement of Charges, attached at Composite Exhibit 3-2.[4] The accompanying correspondence on behalf of Poinciana reflected that Haviland was being provided with an itemization of the Charge Master charges as requested and that the amount he would actually owe would be reflected in the Patient Statement. *Id.* at ¶6. *Id.* at ¶6; *see also* Form "1279" letter, attached at Composite Exhibit 3-2. The following

---

[4] Including an ED Level ▌Charge/HCPCS Code 9928▌ for $3,935.25.

4

month, Haviland was issued an invoice – the Patient Statement – for payment reflecting application of the uninsured discount. *Id.* at ¶4. The total amount billed was $3,102.53. *See* Patient Statement dated February 21, 2017, attached at Exhibit 3-1. Standing alone, that was less than the allegedly undisclosed "surcharge" on which this action is based.

In short, Haviland was never invoiced for, and never paid, a facility fee of $3,935.00. In fact, he never paid anything at all to Poinciana. Moreover, on November 30, 2017, Haviland's account was written off to bad debt and no further collection efforts were undertaken. *See* Poinciana Decl., ¶8.

### B. Plaintiff Shaw.

On or about January 21, 2019, Plaintiff Shaw received emergency medical services at Palms West. Compl.,¶44. Shaw similarly alleges that he received no notice or warning that Palms West intended to add an emergency department "surcharge" to his bill. *Id.*, ¶46. Specifically, Shaw alleges that the "gross amount (before discounts) subsequently billed for the treatment/services provided to Shaw by Defendant Palms West Hospital was $5,437.00," which included an allegedly undisclosed "surcharge" of $1,642.00 in addition to charges for the individual items of treatment and services provided. *Id.* Like Haviland, Shaw alleges that he was "surprised, dismayed and aggrieved" when he found out about the charge. *Id.*, ¶48.

Once again, the Complaint fails to attach either the Conditions of Admissions contract or any bills that Shaw received. Shaw's Conditions of Admission contract, at Section 5, contains identical language to that of Haviland's Conditions of Admission contract excerpted above. *See* Shaw Conditions of Admission contract, attached as Exhibit 4.

Following receipt of his medical services, Shaw requested an itemization of full charges from Palms West, which was provided.[5] *See* Declaration of Records Custodian of Palms West Hospital ("Palms West Decl.") attached at Composite Exhibit 5, at ¶2; *see also* Shaw Itemizations of Hospital Services, dated January 25, 2019, and January 30, 2019, attached at Composite Exhibit 5-1. The correspondence on behalf of Palms West clearly stated that it was not a bill and that Shaw was not being asked to pay the amounts listed. *See Id.* Instead, the correspondence reflected that Shaw was being provided with the itemization of Charge Master charges he requested, and that the amount he would actually owe would be subject to insurance

---

[5] The itemization included an ED Level ▌Charge/HCPCS Code 9928▌ for $1,642. *See* Comp. Ex. 5-1.

payments and other adjustments. *Id.*

On May 8, 2019, Shaw's unpaid account was written off by Palms West with no balance due. *See* Palms West Decl., ¶4. At no time was Shaw sent an invoice seeking payment. *Id.* As such, Shaw was never invoiced for, nor did he ever pay, a facility fee of $1,642.00. *Id.*, ¶¶4-5. In fact, he never paid anything at all to Palms West.

### C. Plaintiff Oleary.

On or about December 18, 2017, Plaintiff Oleary's minor dependent received emergency medical services at Fort Walton Beach. Compl.,¶44. Oleary, like the other named Plaintiffs, alleges that he received no notice or warning that Fort Walton Beach intended to add an emergency department "surcharge" to the bill. *Id.*, ¶51. Specifically, Oleary alleges that the "gross amount (before discounts) subsequently billed for the treatment/services provided to Plaintiff Oleary's minor dependent by Defendant Fort Walton Beach was $6,617.41, which included an undisclosed Surcharge for merely being seen in Fort Walton Beach's emergency room, in addition to the charges for the individual items of treatment and services provided." *Id.*, ¶52. Shaw alleges that he was "charged a substantial surcharge," but does not specify a particular amount, and he echoes the refrain of the other two Plaintiffs that he was "surprised, dismayed and aggrieved" when he found out about the charges. *Id.*, ¶53.

Just as with the other Plaintiffs, the Complaint fails to attach either the Conditions of Admissions contract or any bills Oleary received. Oleary's Conditions of Admission contract, at Section 5, contains identical language to that of the other two Plaintiffs' Conditions of Admission contracts, including that "If supplies and services are provided to [a] Patient who has coverage through . . . certain private health insurance plans, the hospital may accept a discounted payment for those supplies and services. In this event **any payment required from the Patient or Guarantor will be determined by the terms of the . . . private health insurance plan**." *See* Oleary's Conditions of Admission contract, attached as Exhibit 6.

Following the receipt of medical services, the charges for Oleary's dependent, which actually totaled $3,669, not $6,617.41, were submitted to his health insurance for payment. *See* Declaration of Records Custodian of Fort Walton Beach Medical Center ("FWBMC Decl.") attached at Composite Exhibit 7, ¶4; *see also* UB-04, attached at Composite Exhibit 7-1. The health insurer calculated allowable amounts, co-insurance, and deductibles; made a payment of $1,419.41; and determined that the amount due from Oleary was $820.59. *See* FWBMC Decl.,

6

¶4; *see also* EOB, attached at Composite Exhibit 7-1. On January 17, 2018, Oleary was invoiced that amount by Fort Walton Beach. FWBMC Decl., ¶5; *see also* Patient Statement, attached at Exhibit 7-2. On January 25, 2018, Oleary requested an itemized statement of the full charges related to the services received by his dependent, which was thereafter provided.[6] FWBMC Decl., ¶7; *see also* Itemized Statement of Charges, attached at Composite Exhibit 7-3. The accompanying correspondence on behalf of Fort Walton Beach reflected that Oleary was being provided with an itemization of the Charge Master charges as requested, and that the amount he would actually owe would be reflected in the Patient Statement. *See* Form "1279" letter, attached at Composite Exhibit 7-3. Indeed, Oleary's invoice – the Patient Statement – had been issued eight days earlier. *See* Ex. 7-2.

As such, Oleary was never invoiced for, and never paid, an allegedly undisclosed "substantial" facility fee as alleged in the Complaint.

### D. **Plaintiffs' Claims.**

Plaintiffs seek injunctive and declaratory relief under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et seq. and, alternatively, under the Declaratory Judgment Act on behalf of a putative class of all individuals who were charged an emergency room fee at any facility operated by the Defendant Hospitals or any of their affiliates (identified as 50 hospitals across the State of Florida) within the last four years. Compl., ¶¶1-5.

In Count I, Plaintiffs seek a declaratory judgment that Defendants' practice of charging an undisclosed "Emergency Department facility fees" is an unconscionable billing practice, rendering unenforceable the Conditions of Admission agreement which expressly incorporates the price term for the services rendered. Compl. ¶72. Plaintiffs additionally seek declaratory and injunctive relief prohibiting the alleged billing practice and any further collection activity for emergency department facility fees. *Id.* at ¶75.

In Count II, Plaintiffs seek a declaratory judgment that Defendants are violating FDUTPA by failing to provide signage in or around the emergency room facilities, or verbally upon registration, of Emergency Department facility fees. *Id.* ¶¶78, 81. Plaintiffs seek declaratory and injunctive relief, as well as an award of attorneys' fees. *See id.* ¶¶75-76, 86; at 16-17.

---

[6] The itemization included an ED Level ▌Charge/HCPCS Code 9928▌ for $1,567.00. *See* Comp. Ex. 7-3.

For the reasons set forth below, Plaintiffs' claims should be dismissed with prejudice.

## LEGAL STANDARD

As noted above, the Defendant Hospitals' Motion to Dismiss is brought pursuant to both Rule 12(b)(1) and 12(b)(6). It is well established that when considering a Rule 12(b)(1) challenge, the district court may consider evidence outside the pleading, such as testimony and affidavits. *See Morrison v. Amway Corp.,* 323 F.3d 920, 925 n.5 (11th Cir. 2003).

To avoid dismissal under Rule 12(b)(6), "'the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff's complaint should be dismissed.'" *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plausibility "requires pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1264–65 (11th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint "must plausibly establish each element of the cause of action" alleged. *Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1286 (M.D. Fla. 2009). If a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Moreover, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Further, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court may consider extrinsic documents without converting the motion into one for summary judgment if the documents are (1) central to the plaintiff's claim and (2) undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

## ARGUMENT

### I.     THERE IS NO CASE OR CONTROVERSY

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, No. 17-15606, 2019 WL 2292326, at *3 (11th Cir. May 30, 2019); *Florida Ass'n of Rehabilitation Facilities v. Florida Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1216

(11th Cir. 2000). The doctrine of standing is grounded in the case-or-controversy requirement. *A&M Gerber Chiropractic,* 2019 WL 2292326, at \*3. At the time a plaintiff brings a lawsuit, he or she must have standing to prosecute his or her claim. *Tucker v. Phypher,* 819 F.2d 1030, 1033 (11th Cir. 1087). Standing requires that a plaintiff must have a personal stake in the outcome of the litigation. *Id.* A party who invokes a federal court's authority must show, at a minimum, that at the time the complaint was filed, he had suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition. *A&M Gerber Chiropractic,* 2019 WL 2292326, at \*3.

Similarly, the doctrine of mootness is derived from case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy. *Florida Ass'n of Rehabilitation Facilities*, 225 F.3d at 1216. The mootness doctrine requires that the controversy being litigated remain live throughout the litigation. *Id.* In other words, a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief. *Fla. Ass'n of Rehabilitation Facilities,* 225 F.3d at 1217. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion. *Fla. Ass'n of Rehabilitation Facilities*, 225 F.3d at 1217.

Although this matter is brought as a class action, Plaintiffs must establish their own standing to sue and cannot rely on alleged injuries to other putative class members. *See Wilding v. DNC Servs. Corp.*, No. 16-61511-CIV, 2017 WL 6345492, \*4 (S.D. Fla. Aug. 25, 2017). In the context of a class action, a plaintiff who seeks to represent the class must have a "live" claim both at the time the lawsuit is brought and when the determination is made whether to certify a class. *Tucker*, 819 F.2d at 1033. If a plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot. *Id.*

Furthermore, to have standing to pursue declaratory or injunctive relief, a plaintiff "must allege facts from which it appears that there is a substantial likelihood that plaintiff will suffer injury in the future." *Walden v. Ctrs. for Disease Control and Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012); *Malowney v. Federal Collection Deposit Corp.,* 193 F.3d 1342 (11th Cir. 1999). Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Malowney,* 193 F.3d at 1347. Where the plaintiff fails to allege facts from which

9

it appears there is a substantial likelihood that the plaintiff will suffer injury in the future, that the parties have adverse legal interests, and that there is a "sufficient immediacy and reality to warrant the issuance of a declaratory judgment," the plaintiff fails to state a cause of action for declaratory judgment pursuant to 28 U.S.C. § 2201 and the claim must be dismissed. *Marine Pro Dock Sys., LLC v. Polietilen Mamulleri San. Tic. Ltd. Sti.*, No. 18-14006-CIV, 2018 WL 3112170, at *9 (S.D. Fla. Mar. 28, 2018); *Malowney,* 193 F.3d at 1348; *Interstate Fire & Cas. Co. v. Kluger, Peretz, Kaplan & Berlin, P.L.*, 855 F. Supp. 2d 1376, 1380 (S.D. Fla. 2012) (dismissing claim for declaratory relief for lack of case or controversy where plaintiff was solely seeking a declaration as to past events regarding propriety of insurer's refusal of plaintiff's claim under policy).

Plaintiffs do not have a justiciable controversy before this Court.

### A.     None Of The Plaintiffs Was Ever Asked To Pay The Emergency Department Facility Fees Alleged In The Complaint.

As explained above, none of the Plaintiffs was ever actually billed for, let alone paid, an emergency room facility fee as alleged in the Complaint. While each of the Plaintiffs requested and obtained itemized statements listing the full charges associated with their services – which were subsequently used as the basis of this lawsuit – the itemizations did not reflect Plaintiffs actual discounted charges and were not invoices for payment. The invoices subsequently issued to Haviland and Oleary were heavily discounted. In Haviland's case, the invoice was subject to the hospital's standard discount for uninsured patients and amounted in its entirety to less than the allegedly undisclosed "surcharge" described in the Complaint. In Oleary's case, the invoice reflected the amount due as calculated by his dependent's health insurer pursuant to his health insurance plan and the insurer's agreement with the hospital. *See* FWBMC Decl., ¶¶4-5, EOB, Ex. 7-1, Patient Statement, Ex. 7-2.[7] Shaw was never invoiced at all. *See* Palms West Decl., ¶¶4-5.

Plaintiffs lack standing to seek declaratory and injunctive relief relating to an alleged billing practice to which they were never subject, and relating to charges which they never owed or paid. Indeed, the only apparent injury Plaintiffs allege is that they were "surprised, dismayed and aggrieved" by the charges on the itemizations they requested. However, feeling "surprised,

---

[7] Indeed, Plaintiff Oleary's bill and obligation was premised not upon the Hospital's Charge Master prices, but the managed care discounts and allowed amounts pursuant to his private health insurance.

dismayed and aggrieved" does not equate to injury-in-fact, nor confer Article III standing. Moreover, a plaintiff cannot manufacture standing by soliciting the transmission of a document and then alleging it caused distress.

### B. None Of The Plaintiffs Is Being Pursued For Payment Of An Emergency Department Facility Fee.

Furthermore, Haviland and Shaw's unpaid accounts were written off in full before they filed this complaint. Because they are not subject to continuing efforts to collect any payment for the services received (not to mention collection of a facility fee for which they were never invoiced), there is no live no case or controversy. *See, e.g., Ross v. Albany Med. Ctr.*, 104 F.3d 351 (2d Cir. 1996) (affirming dismissal of claims for declaratory and injunctive relief concerning alleged overcharges where overcharge was forgiven, finding that injury was hypothetical and that plaintiff lacked standing to pursue action because "a fear that an obligation to pay may be reinstated is not sufficient to establish an 'injury in fact.'")

Nor can Plaintiffs be deemed "aggrieved" so as to have standing to pursue equitable relief under Section 501.211(1) of FDUTPA. In order for a party to be "aggrieved" under Section 501.211(1), the injury claimed must have actually been suffered and cannot be hypothetical. *Macias v. HBC of Florida, Inc.,* 694 So. 2d 88 (Fla. 3d DCA 1997). While Section 501.211(1) allows for recourse against past conduct that has since been remedied, in addition to present conduct, the "aggrieved" person "must be able to demonstrate some specific past, present, or future grievance, otherwise the statute would have no meaning in violation of settled rules of statutory construction." *Ahern v. Mayo Clinic,* 180 So 3d 165, 173 (Fla. 1st DCA 2015).

Here, because Plaintiffs Haviland and Shaw were never invoiced for the undisclosed facility fees and their accounts have been written off, they have no demonstrable injury and cannot be aggrieved under FDUTPA. *See Jones v. TT of Longwood, Inc.*, No. 606-CV-651 ORL 19 DAB, 2007 WL 2298020, at *1, *8 (M.D. Fla. Aug. 7, 2007) (granting summary judgment on FDUTPA claim, finding that because down payment was returned in full before suit was filed, plaintiff suffered no actual damages and had no standing to represent class of claimants seeking damages or equitable relief under FDUTPA); *Haun v. Don Mealy Imps., Inc.*, 285 F. Supp. 2d 1297, 1307-08 (M.D. Fla. 2003) (granting motion to dismiss FDUTPA claim for injunctive and declaratory relief where deposit was returned before suit was filed and plaintiff failed to allege any actual damages or explain how she was actually aggrieved). Plaintiff Oleary similarly was never invoiced for a facility fee. Moreover, his payment obligation was premised on the managed

care discounts and allowed amounts pursuant to his private health insurance. As such, he was not aggrieved under FDUTPA either.

### C. The Relief Sought By Plaintiffs Is Moot In Light Of State And Federal Transparency Laws And Regulations.

In their Complaint, Plaintiffs take issue with the Defendant Hospitals' incorporation of their Charge Master price lists into the Conditions of Admissions contracts, and seek to prohibit Defendants from continuing to charge emergency department facility fees without further disclosures. Compl., ¶75. In addition to the fact that the Conditions of Admission contracts expressly state that Plaintiffs could request "an estimate of the anticipated charges," Florida's existing pricing transparency laws allow a patient to obtain information about pricing, discounts, and collection processes online, and to request an itemized statement of charges. *See* Section 395.301(1), Florida Statutes (requiring hospitals to: (1) provide the public with website information on amounts payable to the facility for services and procedures in a searchable format, (2) provide information to prospective patients on the hospital's financial assistance policy, including the application process, payment plans, and discounts, and the hospital's charity care policy and collection procedures; (3) and notify each patient during admission and at discharge of his or her right to receive an itemized statement of charges upon request).

In addition, federal law has long provided that hospitals operating within the United States must establish and make public a list of the hospital's standard charges for items and services provided by the hospital. *See* 42 U.S.C. § 300gg-18(e). Moreover, federal regulations effective January 1, 2019 require hospitals, including the Defendant Hospitals, to post their charges online. *See* 83 F.R. 41144, 41686, Vol. 83, No. 160 (Centers for Medicare and Medicaid Servs., Aug. 17, 2018) ("[E]effective January 1, 2019, we announced the update to our guidelines to require hospitals to make available a list of their current standard charges via the internet in a machine readable format and to update this information at least annually, or more often as appropriate. This could be in the form of the chargemaster itself or another form of the hospital's choice, as long as the information is in machine readable format.")

Any relief Plaintiffs could arguably seek by way of injunctive or declaratory relief requiring disclosure is already provided for by federal and state pricing transparency laws and regulations. Accordingly, Plaintiffs' requested relief is moot.

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER FDUTPA.

### A. Plaintiffs Fail To Allege Facts Demonstrating That The Defendant Hospitals Have Engaged In Deceptive Or Unfair Conduct Sufficient To Give Rise To A FDUTPA Claim.

To state a FDUTPA claim, a plaintiff must establish three elements: (i) a deceptive act or unfair practice; (ii) causation; and (iii) actual damages. *See Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). Plaintiffs fail to adequately allege either a deceptive act or an unfair practice by the Defendant Hospitals.

#### 1. Plaintiffs Have Not Adequately Alleged That The Hospitals Deceived Them.

"[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick*, 480 F.3d at 1284 (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.,* 761 So.2d 1256, 1263 (Fla. 1st DCA 2000)).

In the Conditions of Admission contract each named Plaintiff entered into with the respective Defendant Hospital, Section 5 of the contract provides in pertinent part:

> In consideration of the services to be rendered to Patient, Patient or Guarantor individually **promises to pay the Patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the Patient's account**. . . . An estimate of the anticipated charges for services to be provided to the patient is available upon request from the hospital. Estimates may vary significantly from the final charges based on a variety of factors, including but not limited to the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services. . . .
>
> If supplies and services are provided to a Patient **who has coverage through a governmental program or through certain private health insurance plans, the hospital may accept a discounted payment for those supplies and services**. In this event any payment required from the undersigned will be determined by the terms of the governmental program or private health insurance plan**. If the Patient is uninsured and not covered by a governmental**

13

> **program, the patient may be eligible to have his or her account discounted or forgiven under the hospital's uninsured discount or charity care programs in effect at the time of treatment.** I understand that I may request information about these programs from the hospital.

*See* Ex. 1 at ¶5, Ex. 5 at ¶5, and Ex. 8 at ¶5.

The Conditions of Admission forms expressly incorporate the Charge Master as the contractual price term. *Id.* The fact that this is readily apparent on the face of the contracts negates Plaintiffs' contention that they were materially deceived about the pricing of medical services. Furthermore, there is no allegation in the Complaint that any of the Plaintiffs requested a copy of the respective Defendant Hospital's price list and was not provided with the information.[8] Plaintiffs also ignore the fact that the Conditions of Admission form specifically allows them to request "an estimate of the anticipated charges" for the services they would receive. *Id.* There is no allegation that any of the Plaintiffs requested such an estimate of the charges and was not provided with one. Notably, there are no allegations in the Complaint that the Defendant Hospitals' charges to the named Plaintiffs for the services rendered differed in any way from the rates specified in the Defendant Hospitals' Charge Master price lists.

Furthermore, the Conditions of Admission contracts state that patients who are "uninsured and not covered by a governmental program," may be eligible to receive a discount "under the hospital's uninsured discount or charity care programs in effect at the time of treatment." *Id.* The Uninsured Patient Information Document provided to Plaintiff Haviland reflects that the total charges for services provided would be applied to the account, and the uninsured discount would be subsequently applied to the total charges, reducing the amount owed by Haviland. *See* Ex. 2. That is precisely what occurred.

Even assuming the Plaintiffs were correct that the Conditions of Admission contract contains an open price term—which it does not, as explained *infra*—there still is no deception under FDUTPA as a matter of law. *See, e.g., Urquhart v. Manatee Mem'l Hosp.*, No. 8:06-cv-1418-T-17-EAJ, 2007 U.S. Dist. LEXIS 17531, at *12 (M.D. Fla. Mar. 13, 2007) (dismissing claim because "deception does not occur when a pricing term in an agreement for medical services is left undefined"); *Colomar v. Mercy Hosp., Inc.*, No. 05-22409, 2006 U.S. Dist.

---

[8] As noted above, both Florida and federal law have long provided patients and prospective patients with information about hospital charges, billing and collection practices, discounts and charity care.

LEXIS 95834, at *20 (S.D. Fla. Mar. 2, 2006) (dismissing claim and noting that an undefined pricing term "is not deceptive; the fact that it is undefined is apparent from the face of the Agreement"). If the courts in *Colomar* and *Urquhart* found no deception even where a pricing term was not defined in the agreement, then certainly the Conditions of Admission contract at issue here cannot be deemed deceptive because it expressly *does* define the price term. Thus, Plaintiffs have wholly failed to allege that the Defendant Hospitals deceived them in any way.

### 2. Plaintiffs Have Not Adequately Alleged An Unfair Practice.

"An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007) (citing *Rollins, Inc.*, 951 So. 2d at 869). Plaintiffs assert that the Defendant Hospitals engaged in an "unfair" practice by failing to disclose in their contracts, signage or verbally that they specifically intended on charging facility fees for emergency department services. Compl. ¶¶83, 85. This contention fails.

Charging a price expressly agreed upon by the parties cannot form the basis of an "unfair" practice under FDUTPA. *See Zlotnick*, 480 F.3d at 1284 (affirming dismissal of FDUTPA claim against condominium seller who cancelled sales contract and subsequently offered to sell at a higher price to same buyer because agreement gave seller the right to cancel for any reason); *Berry v. Budget Rent A Car Sys., Inc*., 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007) (dismissing FDUTPA claim alleging rental car fee exceeded company's actual costs where fee was "clearly disclosed" in rental agreement). Here, the Conditions of Admission contracts clearly explained how prices will be determined, *i.e*., based on the Charge Master; stated that certain patients would receive discounts; and informed patients that an estimate of anticipated charges would be provided upon request.

### 3. The Defendant Hospitals' Practices Are Consistent With Industry Practice And Cannot Be An Unfair Or Deceptive Practice.

As noted above, the Complaint seeks a declaration of Plaintiffs' obligations with respect to emergency department facility fees, specifically those affiliated with the CMS's Healthcare Common Procedure Coding System (HCPCS) Code 9928█ and 9928█. Although Plaintiffs suggest that these fees are somehow improper "surcharges," they are in fact standard industry codes relating to the costs of providing and maintaining emergency room services and equipment, as well as services provided by non-physician employees of the hospital.

15

Federal regulations, specifically 45 C.F.R. §162.1002(a)(5), (b)(1), designate the American Medical Association's Current Procedural Terminology ("CPT') as the standard codes to be used for reporting and billing physician services and other health care services. *United States ex rel. Riedel v. Bos. Heart Diagnostics Corp.*, 332 F. Supp. 3d 48, 57 (D.D.C. 2018); *see also Newport News Shipbuilding & Dry Dock Co. v. Loxley*, 934 F.2d 511, 513 n.2 (4th Cir. 1991) (noting that the CPT "coding system is the most widely accepted nomenclature for the reporting of physician procedures and services under government and private health insurance programs") (internal quotation marks omitted); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1158 (9th Cir. 2011) (noting that "the CPT had become an industry standard" by 1997).[9] These codes are found in the American Medical Association's Current Procedural Terminology Manual ("CPT Manual") in the HCPCS, each of which provides a corresponding description of medical services for each code. *United States ex rel. Borges v. Doctor's Care Med. Ctr., Inc.*, No. 01-8112-CIV, 2007 WL 9702639, at *3 (S.D. Fla. Jan. 29, 2007).

HCPCS Codes 99281 through 99285 define five levels of services relating to patient evaluation and management in an emergency department. *U.S. ex rel Trim v. McKean*, 31 F. Supp. 2d 1308, 1310 (W.D. Okla. 1998). The levels of service vary based on the patient's history, the extent of the examination needed, and the complexity of the medical decision-making. Thus, far from being a "surcharge," codes 9928█ and 9928█ are the standard, authorized HCPCS codes approved by CMS for billing emergency department services. Plaintiffs' attempt to cast the fees as somehow deceptive and unfair is thus negated by established industry practice. *See Hooper v. UnitedHealthcare Ins. Co.*, 694 F. App'x 902, 910 (4th Cir. 2017) (affirming summary judgment for ERISA plan and noting "[w]e see nothing in the Plan that would preclude Michelin, in the exercise of its discretion, from relying upon this well-established industry standard for procedure classification and medical billing when determining whether a particular procedure should be classified and paid as "office surgery" as opposed to as an "office visit" under the terms of the Plan."); *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC.*, No. CV H-08-2336, 2011 WL 12896736, at *2, 13 (S.D. Tex.

---

[9] *See* https://www.cms.gov/Medicare/Coding/MedHCPCSGenInfo/HCPCS_Coding_Questions.html ("The CPT is a uniform coding system consisting of descriptive terms and identifying codes that are used primarily to identify medical services and procedures furnished by physicians and other health care professionals. These health care professionals use the CPT codes to identify services and procedures for which they bill public or private health insurance programs.")

Aug. 22, 2011) (noting Codes 99281–99285 are used for billing emergency department services provided by hospital-based facilities).[10]  Accordingly, there is no deception or unfairness in connection with charging an emergency room facility fee.

Because the Complaint fails to plead the essential elements of a FDUTPA claim, it should be dismissed.

### B. Plaintiffs Fails To Allege That They Have Been Aggrieved Under FDUTPA And Therefore Lack Standing To Sue For Equitable Relief.

Because Plaintiffs have additionally failed to allege that they have been aggrieved under FDUTPA, they do not have standing to sue for equitable relief.  FDUTPA provides, in pertinent part, that:

> Without regard to any other remedy or relief to which a person is entitled, ***anyone aggrieved by a violation of this part*** may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

Fla. Stat. § 501.211(1) (emphasis added).  Thus, in order to seek declaratory or injunctive relief under FDUTPA, a plaintiff must be damaged in a manner cognizable under the consumer protection statute.

In the present case, while asking the Court to declare that the Defendant Hospitals have violated FDUTPA and to enjoin them from further violations, Plaintiffs have not alleged that they have been aggrieved by the Defendant Hospitals' alleged billing practices such that they have standing to seek injunctive or declaratory relief.  Plaintiffs do not suggest that they paid for goods or services worth less than those delivered, nor do Plaintiffs allege any facts to suggest that they will be subject to this alleged billing practice in the future.  As Plaintiffs have not alleged an actual injury under FDUTPA, they are not aggrieved parties, and, therefore, lack standing to seek equitable relief on behalf of other consumers.  *See General Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998) (reversing verdict in favor of plaintiff on FDUTPA claim upon concluding that "to be actionable an unfair or deceptive trade practice must be the *cause* of loss or damage to a consumer"); *Smith v. 2001 South Dixie*

---

[10] *See also Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Texas, Inc.*, 892 F. Supp. 2d 847, 853 (S.D. Tex. 2012) ("UHC notes that 'there are two components to payments for services provided in licensed hospital emergency rooms: a 'facility' fee and a 'professional' fee. EHC submitted claims for facility fees to UHC, and PA submitted claims for professional fees.'").

*Highway, Inc.*, 872 So. 2d at 993 (Fla. 4th DCA 2004) (holding that plaintiff could not maintain claim under FDUTPA where she had not alleged "actual damages" within FDUTPA and sought injunctive relief in the form of reinstatement of employment – relief beyond that offered by FDUTPA). *Compare Davis v. Powertel*, 776 So. 2d 971, 975 (Fla. 1st DCA 2001) (holding that Section 501.211(1) authorizes *aggrieved plaintiff* to seek injunctive relief, even if that relief does not benefit the customer who filed the suit, because FDUTPA "is designed to protect not only the rights of litigants, but also the rights of the consuming public at large.").

Accordingly, Count II should be dismissed for failure to sufficiently allege that Plaintiffs are aggrieved parties suffering actual injury who have standing to sue for equitable relief.

### III. JOINDER IN HCA HEALTHCARE AND DIVISION MOTION TO DISMISS

The Defendant Hospitals join and adopt the arguments and positions asserted by co-defendants in the Motion to Dismiss which are applicable to the Defendant Hospitals, and request that the Court dismiss the claims against the Defendant Hospitals for the same reasons.

### CONCLUSION

For the reasons set forth above, Defendants Poinciana Medical Center, Inc., Fort Walton Beach Medical Center, Inc., and Palms West Hospital Limited Partnership respectfully request this Court to dismiss the Complaint in its entirety with prejudice. Dismissal with prejudice is appropriate because Plaintiffs lack standing to bring these claims, and as such, amendment would be futile.

Dated: _____, 2019

Respectfully Submitted,

TACHE, BRONIS, CHRISTIANSON AND DESCALZO, P.A.
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Telephone:    (305) 537-9565
Facsimile:     (305) 537-9567

By: */s/ Walter J. Taché*
    Walter J. Taché, Esq.
    Florida Bar No. 028850
    wtache@tachebronis.com
    Magda C. Rodriguez, Esq.
    Florida Bar No. 072688
    mrodriguez@tachebronis.com
    service@tachebronis.com

*Counsel for Defendants*
*Poinciana Medical Center, Inc.*
*Fort Walton Beach Medical Center, Inc. and*
*Palms West Hospital Limited Partnership*

**CERTIFICATE OF SERVICE**

I CERTIFY THAT, on this 14th day of June, 2019 I electronically filed the foregoing document and its attachments with the Clerk for the United States District Court, Southern District of Florida. The electronic case filing system (CM/ECF) will send a Notice of Electronic Filing (NEF) to the attorneys of record.

Jared Michael Lee, Esq.
JACKSON LEE, P.A.
1991 Longwood Lake Mary Road
Longwood, Florida 32750
Jared@JacksonLeePA.com
*Attorney for Plaintiff*

John D. Emmanuel, Esq.
Ashley B. Trehan, Esq.
Buchanan, Ingersol & Rooney, P.C.
401 East Jackson Street, Suite 2400
Tampa, Florida 33602
John.emmanuel@bipc.com
Ashley.trehan@bipc.com
Sabrian.Storno@bipc.com
*Attorneys for Defendants*
*East Florida Division, Inc.*
*North Florida Division I, Inc. and*
*HCA Healthcare, Inc.*

                                              By: */s/ Walter J. Taché*
                                                  Walter J. Taché