POINCIANA MEDICAL CENTER   HAVILAND   NATHAN
Y.ER  1978
REDACTED/2016
ARRIAGA-ONEILL, YARITZA **Conditions of Admission and Consent for Outpatient Care**
ARRIAGA-ONEILL

In this document, **"Patient"** means the person receiving treatment. **"Patient Representative"** means any person acting on behalf of the Patient and signing as the Patient's representative. Use of the word "I", "you", "your" or "me" may in context include both the Patient and the Patient Representative. With respect to financial obligations "I" or "me" may also, depending on the context, mean financial guarantor "Guarantor".

**"Provider"** means the hospital and may include healthcare professionals on the hospital's staff and/or hospital-based physicians, which include but are not limited to: Emergency Department Physicians, Pathologists, Radiologists, Anesthesiologists, Hospitalists, certain other licensed independent practitioners and any authorized agents, contractors, affiliates, successors or assignees acting on their behalf.

Legal Relationship between Hospital and Physicians. Most or all of the physicians performing services in the hospital are independent and are not hospital agents or employees. Independent physicians are responsible for their own actions and the hospital shall not be liable for the acts or omissions of any such independent physicians.

1. **Consent to Treatment.** I consent to the procedures which may be performed during this hospitalization or during an outpatient episode of care, including, but not limited to, emergency treatment or services, and which may include laboratory procedures, x-ray examination, diagnostic procedures, medical, nursing or surgical treatment or procedures, anesthesia, or hospital services rendered as ordered by the Provider. I consent to allowing students as part of their training in health care education to participate in the delivery of my medical care and treatment or be observers while I receive medical care and treatment at the Hospital, and that these students will be supervised by instructors and/or hospital staff.

2. **Consent to Treatment Using Telemedicine.** I consent to treatment involving the use of electronic communications ("Telemedicine") to enable health care providers at different locations to share my individual patient medical information for diagnosis, therapy, follow-up, and/or education purposes. I consent to forwarding my information to a third party as needed to receive Telemedicine services, and I understand that existing confidentiality protections apply. I acknowledge that while Telemedicine can be used to provide improved access to care, as with any medical procedure, there are potential risks and no results can be guaranteed or assured. These risks include, but are not limited to: technical problems with the information transmission or equipment failures that could result in lost information or delays in treatment. I understand that I have a right to withhold or withdraw my consent to the use of Telemedicine in the course of my care at any time, without affecting my right to future treatment and without risking the loss or withdrawal of any program benefit to which I would otherwise be entitled.

3. **Consent to Medication Not Yet FDA Approved and/or Medication Prepared/Repackaged by Outsourcing or Compounding Pharmacy.** As part of the services provided, you may be treated with a medication that has not received FDA approval. You may also receive a medication that has been prepared or repackaged by an outsourcing facility or compounding pharmacy. Certain medications, for which there are no alternatives or which your physician recommends, may be necessary for potentially life-saving treatment.

 POINCIANA MEDICAL CENTER   HAVILAND   NATHAN
Y, ER   /1978
/2016
ARRIAGA-ONEILL, YARITZA
ARRIAGA-ONEILL

4. **Consent to Photographs, Videotapes and Audio Recordings.** I consent to photographs, videotapes, digital or audio recordings, and/or images of me being recorded for security purposes and/or the hospital's quality improvement and/or risk management activities. I understand that the facility retains the ownership rights to the images and/or recordings. I will be allowed to request access to or copies of the images and/or recordings when technologically feasible unless otherwise prohibited by law. I understand that these images and/or recordings will be securely stored and protected. Images and/or recordings in which I am identified will not be released and/or used outside of the facility without a specific written authorization from me or my legal representative unless otherwise required by law.

5. **Financial Agreement.** In consideration of the services to be rendered to Patient, Patient or Guarantor individually promises to pay the Patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the Patient's account. Some special items will be priced separately if there is no price listed on the Charge Master. An estimate of the anticipated charges for services to be provided to the Patient is available upon request from the hospital. Estimates may vary significantly from the final charges based on a variety of factors, including, but not limited to, the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services.

**Professional services rendered by independent contractors are not part of the hospital bill. These services will be billed to the Patient separately.** I understand that physicians or other health care professionals may be called upon to provide care or services to me or on my behalf, but that I may not actually see, or be examined by, all physicians or health care professionals participating in my care; for example, I may not see physicians providing radiology, pathology, EKG interpretation and anesthesiology services. I understand that, in most instances, there will be a separate charge for professional services rendered by physicians to me or on my behalf, and that I will receive a bill for these professional services that is separate from the bill for hospital services.

The hospital will provide a medical screening examination as required to all Patients who are seeking medical services to determine if there is an emergency medical condition without regard to the Patient's ability to pay. If there is an emergency medical condition, the hospital will provide stabilizing treatment within its capacity. However, Patient and Guarantor understand that if Patient does not qualify under the hospital's charity care policy or other applicable policy, Patient or Guarantor is not relieved of his/her obligation to pay for these services.

If supplies and services are provided to Patient who has coverage through a governmental program or through certain private health insurance plans, the hospital may accept a discounted payment for those supplies and services. In this event any payment required from the Patient or Guarantor will be determined by the terms of the governmental program or private health insurance plan. If the Patient is uninsured and not covered by a governmental program, the Patient may be eligible to have his or her account discounted or forgiven under the hospital's uninsured discount or charity care programs in effect at the time of treatment. I understand that I may request information about these programs from the hospital.

I also understand that, as a courtesy to me, the hospital may bill an insurance company offering coverage, but may not be obligated to do so. Regardless, I agree that, except where prohibited by law, the financial

 POINCIANA MEDICAL CENTER            HAVILAND        NATHAN
                                                    /1978
Y, ER
REDACTED 2016
ARRIAGA-ONEILL, YARITZA
ARRIAGA-ONEILL responsibility for the services rendered belongs to me, the Patient or Guarantor. I agree to pay for services that are not covered and covered charges not paid in full by insurance coverage including, but not limited to, coinsurance, deductibles, non-covered benefits due to policy limits or policy exclusions, or failure to comply with insurance plan requirements.

6. **Third Party Collection**. I acknowledge that the Providers may utilize the services of a third party Business Associate or affiliated entity as an extended business office ("EBO Servicer") for medical account billing and servicing. During the time that the medical account is being serviced by the EBO Servicer, the account shall not be considered delinquent, past due or in default, and shall not be reported to a credit bureau or subject to collection legal proceedings. When the EBO Servicer's efforts to obtain payment have been exhausted due to a number of factors (for e.g., Patient or Guarantor's failure to pay or make a payment arrangement after insurance adjustments and payments have been credited, and/or the insurer's denial of claim(s) or benefits is received), the EBO Servicer will send a final notice letter which will include the date that the medical account may be returned from the EBO Servicer to the Provider. Upon return to the Provider by the EBO Servicer, the Provider may place the account back with the EBO Servicer, or, at the option of the Provider, may determine the account to be delinquent, past due and in default. Once the medical account is determined to be delinquent it may be subject to late fees, interest as stated, referral to a collection agency for collection as a delinquent account, credit bureau reporting and enforcement by legal proceedings.

I also agree that if the Provider initiates collection efforts to recover amounts owed by me or my Guarantor, then, in addition to amounts incurred for the services rendered, Patient or Guarantor will pay, to the extent permitted by law: (a) any and all costs incurred by the Provider in pursuing collection, including, but not limited to, reasonable attorneys' fees, and (b) any court costs or other costs of litigation incurred by the Provider.

7. **Assignment of Benefits.** Patient assigns all of his/her rights and benefits under existing policies of insurance providing coverage and payment for any and all expenses incurred as a result of services and treatment rendered by the Provider and authorizes direct payment to the Provider of any insurance benefits otherwise payable to or on behalf of Patient for the hospitalization or for outpatient services, including emergency services, if rendered. Patient understands that any payment received from these policies and/or plans will be applied to the amount that Patient or Guarantor has agreed to pay for services rendered during this admission and, that Provider will not retain benefits in excess of the amount owed to the Provider for the care and treatment rendered during the admission.

I understand that any health insurance policies under which I am covered may be in addition to other coverage or benefits or recovery to which I may be entitled, and that Provider, by initially accepting health insurance coverage, does not waive its rights to collect or accept, as payment in full, any payment made under different coverage or benefits or any other sources of payment that may or will cover expenses incurred for services and treatment.

I hereby **irrevocably appoint** the Provider as my authorized representative to pursue any claims, penalties, and administrative and/or legal remedies on my behalf for collection against any responsible payer, employer-sponsored medical benefit plans, third party liability carrier or, any other responsible third party ("Responsible Party") for any and all benefits due me for the payment of charges associated with my treatment. This assignment shall not be construed as an obligation of the Providers to pursue

  POINCIANA MEDICAL CENTER       HAVILAND        NATHAN
                                                  /1978
Y.ER
REDACTED/2016
ARRIAGA-ONEILL, YARITZA
ARRIAGA-ONEILL any such right of recovery. I acknowledge and understand that I maintain my right of recovery against my insurer or health benefit plan and the foregoing assignment does not divest me of such right.

I agree to take all actions necessary to assist the Provider in collecting payment from any such Responsible Party should the Provider(s) elect to collect such payment, including allowing the Provider(s) to bring suit against the Responsible Party in my name. If I receive payment directly from any source for the medical charges associated with my treatment acknowledge that it is my duty and responsibility to immediately pay any such payments to the Provider(s).

8. **Medicare Patient Certification and Assignment of Benefit.** I certify that any information I provide in applying for payment under Title XVIII ("Medicare") or Title XIX ("Medicaid") of the Social Security Act is correct. I request payment of authorized benefits to be made on my behalf to the hospital or hospital-based physician by the Medicare or Medicaid program.

9. **Private Room.** I understand and agree that I am (or Guarantor is) responsible for any additional charges associated with the request and/or use of a private room.

10. **Outpatient Medicare Patients.** Medicare does not provide coverage for "self-administered drugs" or drugs that you normally take on your own, with only a few limited exceptions. If you get self-administered drugs that aren't covered by Medicare Part B, we may bill you for the drug. However, if you are enrolled in a Medicare Part D Drug Plan, these drugs may be covered in accordance with Medicare Part D Drug Plan enrollment materials. If you pay for these self-administered drugs, you can submit a claim to your Medicare Part D Drug Plan for a possible refund.

11. **Communications About My Healthcare.** I authorize my healthcare information to be disclosed for purposes of communicating results, findings, and care decisions to my family members and others I designate to be responsible for my care. I will provide those individuals with a password or other verification means specified by the hospital. I agree I may be contacted by the Provider or an agent of the Provider or an independent physician's office for the purposes of scheduling necessary follow-up visits recommended by the treating physician.

12. **Consent to Telephone Calls for Financial Communications.** I agree that, in order for you, or your EBO Servicers and collection agents, to service my account or to collect any amounts I may owe, I expressly agree and consent that you or your EBO Servicer and collection agents may contact me by telephone at any telephone number I have provided or you or your EBO Servicer and collection agents have obtained or, at any number forwarded or transferred from that number, regarding the hospitalization, the services rendered, or my related financial obligations. Methods of contact may include using pre-recorded/artificial voice messages and/or use of an automatic dialing device, as applicable.

13. **Consent to Email or Text Usage for Discharge Instructions and Other Healthcare Communications.** If at any time I provide the Providers an email or text address at which I may be contacted, I consent to receiving discharge instructions and other healthcare communications at the email or text address I have provided or you or your EBO Servicer have obtained or, at any text number forwarded or transferred from that number. These discharge instructions may include, but not be limited to: post-operative instructions, physician follow-up instructions, dietary information, and prescription

 POINCIANA MEDICAL CENTER        HAVILAND        NATHAN
Y.ER                                              /1978
REDACTED 2016
ARRIAGA-ONEILL, YARITZA
ARRIAGA-ONEILL information. The other healthcare communications may include, but are not limited to communications to family or designated representatives regarding my treatment or condition, or reminder messages to me regarding appointments for medical care.

14. **Release of Information.** I hereby permit Providers to release healthcare information for purposes of treatment, payment or healthcare operations. Healthcare information regarding a prior admission(s) at other HCA affiliated facilities may be made available to subsequent HCA-affiliated admitting facilities to coordinate Patient care or for case management purposes. Healthcare information may be released to any person or entity liable for payment on the Patient's behalf in order to verify coverage or payment questions, or for any other purpose related to benefit payment. Healthcare information may also be released to my employer's designee when the services delivered are related to a claim under worker's compensation. If I am covered by Medicare or Medicaid, I authorize the release of healthcare information to the Social Security Administration or its intermediaries or carriers for payment of a Medicare claim or to the appropriate state agency for payment of a Medicaid claim. This information may include, without limitation, history and physical, emergency records, laboratory reports, operative reports, physician progress notes, nurse's notes, consultations, psychological and/or psychiatric reports, drug and alcohol treatment and discharge summary. Federal and state laws may permit this facility to participate in organizations with other healthcare providers, insurers, and/or other health care industry participants and their subcontractors in order for these individuals and entities to share my health information with one another to accomplish goals that may include but not be limited to: improving the accuracy and increasing the availability of my health records; decreasing the time needed to access my information; aggregating and comparing my information for quality improvement purposes; and such other purposes as may be permitted by law. I understand that this facility may be a member of one or more such organizations. This consent specifically includes information concerning psychological conditions, psychiatric conditions, intellectual disability conditions, genetic information, chemical dependency conditions and/or infectious diseases including, but not limited to, blood borne diseases, such as HIV and AIDS.

15. **Other Acknowledgements.**

    **Personal Valuables.** I understand that the hospital maintains a safe for the safekeeping of money and valuables, and the hospital shall not be liable for the loss of or damage to any money, jewelry, documents, furs, fur coats and fur garments, or other articles of unusual value and small size, unless placed in the safe, and shall not be liable for the loss or damage to any other personal property, unless deposited with the hospital for safekeeping. The liability of the hospital for loss of any personal property that is deposited with the hospital for safekeeping is limited to the greater of five hundred dollars ($500.00) or the maximum required by law, unless a written receipt for a greater amount has been obtained from the hospital by the Patient. The hospital is not responsible for the loss or damage of cell phones, glasses or dentures or personal valuables unless they are placed in the hospital safe in accordance with the terms as stated above.

    **Weapons/Explosives/Drugs.** I understand and agree that if the hospital at any time believes there may be a weapon, explosive device, illegal substance or drug, or any alcoholic beverage in my room or with my belongings, the hospital may search my room and my belongings located anywhere on hospital

 POINCIANA MEDICAL CENTER   HAVILAND  NATHAN
Y,ER                                                       REDACTED 1978
REDACTED /2016
ARRIAGA-ONEILL, YARITZA
ARRIAGA-ONEILL property, confiscate any of the above items that are found, and dispose of them as appropriate, including delivery of any item to law enforcement authorities.

**Patient Visitation Rights.** I understand that I have the right to receive the visitors whom I or my Patient Representative designates, without regard to my relationship to these visitors. I also have the right to withdraw or deny such consent at any time. I will not be denied visitation privileges on the basis of age, race, color, national origin, religion, gender, gender identity and gender expression, and sexual orientation or disability. All visitors I designate will enjoy full and equal visitation privileges that are no more restrictive than those that my immediate family members would enjoy. Further, I understand that the hospital may need to place clinically necessary or reasonable restrictions or limitations on my visitors to protect my health and safety in addition to the health and safety of other Patients. The hospital will clearly explain the reason for any restrictions or limitations if imposed. If I believe that my visitation rights have been violated, I or my representative has the right to utilize the hospital's complaint resolution system.

**Additional Provision for Admission of Minors/ Incapacitated Patient.** I, the undersigned, acknowledge and verify that I am the legal guardian or custodian of the minor/incapacitated patient.

16. **Patient Self Determination Act.** I have been furnished information regarding Advance Directives (such as durable power of attorney for healthcare and living wills). Please initial or place a mark next to one of the following applicable statements:

|  | I executed an Advance Directive and have been requested to supply a copy to the hospital | I have not executed an Advance Directive, wish to execute one and have received information on how to execute an Advance Directive | I have not executed an Advance Directive and do not wish to execute one at this time |
|---|---|---|---|
|  |  |  | ✓ |

17. **Notice of Privacy Practices.** I acknowledge that I have received the hospital's Notice of Privacy Practices, which describes the ways in which the hospital may use and disclose my healthcare information for its treatment, payment, healthcare operations and other prescribed and permitted uses and disclosures. I understand that this information may be disclosed electronically by the Provider and/or the Provider's business associates. I understand that I may contact the hospital Privacy Officer designated on the notice if I have a question or complaint. To the extent permitted by law, I consent to the use of disclosure of my information for the purposes described in the hospital's Notice Privacy Practice.

Acknowledge: _____ (Initial)

18. **Consent to Authorize Use of Email and Text for Patient Billing and Financial Obligations.** By my consent below, I authorize the use of any email address or cellular telephone number I provide for receiving information relating to my financial obligations, including, but not limited to, payment reminders, delinquent notifications, instructions and links to hospital Patient billing information. I understand and acknowledge that my patient account number may appear in the email or text.

REDACTED

POINCIANA MEDICAL CENTER  HAVILAND  NATHAN
REDACTED 1978

Y.ER
REDACTED 2016
ARRIAGA-ONEILL, YARITZA
ARRIAGA-ONEILL

Acknowledge: \_\_\_\_\_ (Initial) I consent to use of email for Patient billings and financial obligation purposes.

Acknowledge: \_\_\_\_\_ (Initial) I consent to use of text for Patient billings and financial obligation purposes.

19. **Acknowledgement**: I have been given the opportunity to read and ask questions about the information contained in this form, **specifically** including but not limited to the financial obligation's provisions and assignment of benefit provisions, and I acknowledge that I either have no questions or that my questions have been answered to my satisfaction and that I have signed this document freely and without inducement other than the rendition of services by the Providers.

Acknowledge: \_\_\_\_\_ (Initial)

20. **Acknowledgement of Notice of Patient Rights and Responsibilities.** I have been furnished with a Statement of Patient Rights and Responsibilities ensuring that I am treated with respect and dignity and without discrimination or distinction based on age, gender, disability, race, color, ancestry, citizenship, religion, pregnancy, sexual orientation, gender identity or expression, national origin, medical condition, marital status, veteran status, payment source or ability, or any other basis prohibited by federal, state, or local law.

Acknowledge: \_\_\_\_\_ (Initial)

| Date: REDACTED 16 Time: 5:17 | I, the undersigned, as the Patient or Patient Representative, or, for a minor/incapacitated Patient, as the legal guardian, hereby certify I have read, and fully and completely understand this Conditions of Admission and Authorization for Medical treatment, and that I have signed this Conditions of Admission and Authorization for Medical Treatment knowingly, freely, voluntarily and agree to be bound by its terms. I have received no promises, assurances, or guarantees from anyone as to the results that may be obtained by any medical treatment or services. If insurance coverage is insufficient, denied altogether, or otherwise unavailable, the undersigned agrees to pay all charges not paid by the insurer. |
|---|---|

REDACTED  POINCIANA MEDICAL CENTER        HAVILAND    NATHAN
Y.ER                                                          REDACTED/1978
REDACTED/2016
ARRIAGA-ONEILL, YARITZA
ARRIAGA-ONEILL

| **Patient/Patient Representative Signature:** | **Witness Signature and Title:** |
|---|---|
| X _____ | X _____ |
| If you are not the Patient, please identify your Relationship to the Patient. | **Additional Witness Signature and Title:** (required for Patients unable to sign without a representative or Patients who refuse to sign) |
| (Circle or mark relationship(s) from list below): | X _____ |
| (Spouse) <br> Parent <br> Legal Guardian <br> Neighbor/Friend <br> Sibling <br> Healthcare Power of Attorney <br> Guarantor <br> Other (please specify): | HCA Florida Conditions Of Admission and Consent to Outpatient Services English 06.20.2016 |